DECISION
{¶ 1} Relator, Chad L. Tussing, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that the commission did not abuse its discretion in denying claimant's request for PTD. Therefore, the magistrate recommended that this court deny the requested writ of mandamus.
 {¶ 3} Relator has filed the following objection to the magistrate's decision:
The Magistrate Erred by Disregarding the Internal Inconsistency Within the Report of Dr. Donald Tosi, Upon Whom the Industrial Commission Relied in Part to Deny Relator Chad Tussing Permanent Total Disability Compensation.
 {¶ 4} The commission concedes that internally inconsistent reports do not constitute some evidence upon which it can rely.State ex rel. Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582. However, a review of the record indicates that the issue contained in relator's objection was not raised administratively. Relator's failure to pursue this issue administratively bars this court from addressing it de novo in this action. State ex rel.Berman Industries, Inc. v. Indus. Comm., Franklin App. No. 04AP-1254, 2005-Ohio-5083, at ¶ 23, citing State ex rel. QuartoMining Co. v. Foreman (1997), 79 Ohio St.3d 78. Accordingly, we overrule relator's objection to the magistrate's decision.
 {¶ 5} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objection to the magistrate's decision is overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objection overruled; writ denied.
Sadler and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Chad L. Tussing, : Relator, : :
v. : No. 05AP-178 :
Industrial Commission of Ohio and : (REGULAR CALENDAR) First Choice Construction, Inc., : Respondents. : :
 MAGISTRATE'S DECISION Rendered on August 24, 2005 Philip J. Fulton Law Office, and Jacob Dobres, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, Chad L. Tussing, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
 Findings of Fact: {¶ 7} 1. Relator sustained a work-related injury on May 18, 2000, and his claim has been allowed for "sprain lumbar region; sprain thoracic region; T2-T3 protruding disc; T8-T9 protruding disc; anxiety state nos; depressive disorder nec."
 {¶ 8} 2. On January 6, 2004, relator filed his application for PTD compensation. Relator was 28 years old at the time of the filing of the application, indicated that he had obtained his GED and had specialized training in welding as well as accounting course work at Columbus State University. Relator indicated that he is able to read, write and perform basic math and that his past work history included jobs as a construction worker, pizza delivery person, landscaper and machine shop worker. Relator has not worked since his injury.
 {¶ 9} 3. In support of his application for PTD compensation, relator filed the September 4, 2003 report of Jerry E. Flexman, Ph.D., and the October 28, 2003 report of Michael G. Drown, Ph.D. In his report, Dr. Flexman indicated that relator had reached maximum medical improvement ("MMI") for his allowed psychological conditions and further indicated that relator was unable to return to his former position of employment due to the significant agitation. Dr. Flexman also opined:
Mr. Tussing's limitations would be to work environments that would not require interactions with others especially with the public. Supervision of others or working in close proximity to others would also be problematical for him primarily due to his attitude and anger problems. I believe that he would have a difficult time working in an environment that would require production quotas.
 {¶ 10} In his October 28, 2003 report, Dr. Drown indicated that relator had not reached MMI and recommended that relator commit to a regimen of therapy. Dr. Drown further opined that relator's allowed psychological condition is permanent and prohibits him from being able to return to and sustain successful employment. He indicated that relator's preoccupation with his physical and psychological problems, combined with his intense anger and hostility, made relator a safety risk in a work environment.
 {¶ 11} 4. Relator was examined by Donald J. Tosi, Ph.D., on behalf of the commission. Dr. Tosi opined that relator had reached MMI, assessed a 32 percent whole person impairment for his allowed psychological conditions, and that relator could not return to his former position of employment but that he would be able to work in a low stress situation. Dr. Tosi indicated that relator was mildly impaired relative to his daily activities, and moderately impaired relative to social interaction, adaptation to the work place, concentration, attention and pace. Dr. Tosi noted that relator indicates that he does not get along with other people well and prefers being alone; that relator has a low frustration level and would have difficulty performing under normal work stress; and that relator would have difficulty sustaining focus and attention long enough to permit completion of tasks in a suitable work environment.
 {¶ 12} 5. Relator was also examined by Boyd W. Bowden, D.O., who issued a report dated August 31, 2004. Relative to relator's allowed physical conditions, Dr. Bowden opined that relator had reached MMI, assessed a five percent whole person impairment, and indicated that relator could perform sedentary work activity.
 {¶ 13} 6. Two vocational reports were also submitted as evidence. In his November 16, 2004 report, Jerry A. Olsheski, Ph.D., indicated that, pursuant to the reports of Drs. Flexman and Drown, relator was not employable. Based upon the reports of Drs. Bowden and Tosi, Dr. Olsheski indicated that relator could perform the following jobs: "Lens Inspector," "Circuit Board Inspector," "Food Checker," "Final Assembler, Optical Goods," and "Surveillance System Monitor." Dr. Olsheski noted that relator's age and education were positive vocational factors and that he did not have any skills transferable to less strenuous types of occupations.
 {¶ 14} In his November 3, 2004 report, Beal D. Lowe, Ph.D., concluded that relator was unemployable as a result of his anger, irritability and other interpersonal difficulties.
 {¶ 15} 7. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on January 12, 2005, and resulted in an order denying the compensation. Based upon the reports of Drs. Bowden, Flexman and Tosi, the SHO found that relator "has the residual capacity to perform low stress isolated or semi-isolated sedentary work." The commission then went on to discuss the nonmedical factors and summarized his findings as follows:
In summary[,] it is found that at claimant's young age of 29 and considering the fact that he has an above average education, that he will have the time/opportunity and intellectual capacity to learn job skills commensurate with his residual capacity of being able to perform isolated or semi-isolated low stress sedentary employment. While said work would certainly be limited in number, Mr. Olsheski in his vocational assessment did list jobs that would qualify under these restrictions such as surveillance system monitor, lens inspector, and final assembler of optical goods. These sedentary positions are or could be tailored to be isolated or semi-isolated thereby meeting claimant's restrictions. As indicated[,] the claimant does certainly have the capacity and opportunity to learn these particular job skills in a relatively short period of time.
 {¶ 16} 8. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law: {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 19} In this mandamus action, relator challenges the commission's order from the standpoint that the commission concluded that he was capable of performing "low stress isolated or semi-isolated sedentary work" without defining what the commission meant and without appreciating that the commission's order assumes that stress is external and comes only from the job and does not take into account the internal stress that relator has. For the reasons that follow, this magistrate rejects relator's argument.
 {¶ 20} Based upon the psychological evidence relied upon by the commission, it is understood that while relator gets along well with his family, he does not get along well with other people. Furthermore, the evidence indicates that he has a low frustration level, has difficulty performing under normal work stress, and that he would function best in a low stress work environment. In its order, the commission reiterated the exact same statements made by the doctors who rendered opinions relative to relator's allowed psychological conditions. The commission indicated that, from a purely physical standpoint, relator could perform sedentary work. Relator does not challenge this portion of the commission's order. The commission then went on to indicate that relator could perform low stress isolated or semi-isolated work. It is clear from reading the psychological reports in the record that relator needs a job which would have less stress than what one would consider the average amount of stress involved in a job and that he needs to be in a job where he does not have a great deal of interaction with other people. Contrary to relator's assertion that these terms are not capable of definition, the magistrate finds that, when read in conjunction with the psychological evidence relied upon by the commission, those terms are easy to understand. While Dr. Tosi indicated that relator would have "difficulty" performing under normal work stress and "difficulty" sustaining focus and attention long enough to permit completion of tasks, Dr. Tosi did not say that relator could not do so. Instead, Dr. Tosi ultimately concluded that, in spite of these "difficulties," relator could perform work in a low stress situation. Furthermore, contrary to relator's assertion, by taking into account the psychological evidence in front of the commission, the commission accepted that, internally, relator does have difficulties and that he is easily frustrated. Perhaps this is the "internal stress" to which relator is referring when he indicates that the commission only considered the external stress factors of work. In fact, both Drs. Flexman and Tosi opined that relator could return to work. Dr. Tosi specifically opined that relator would be able to work in a low stress situation, while Dr. Flexman opined that relator could work in "environments that would not require interaction with others especially with the public" and "without working in close proximity to others." The commission relied upon both of these physicians who evaluated relator for his allowed psychological conditions. Both of those doctors accepted his allowed psychological conditions, evaluated him for such, and concluded that he would be capable of work. As such, the magistrate finds that it was not an abuse of discretion for the commission to rely upon those reports and to thereafter find that relator was capable of working in low stress positions where he would be isolated from other people.
 {¶ 21} Relator cites State ex rel. Mann v. Indus. Comm.
(1998), 80 Ohio st.3d 656, wherein the commission denied PTD compensation to a claimant who had previously worked in nonsedentary jobs, who had obtained his GED, and who had worked in the food service industry. The commission determined that the claimant could perform a sedentary low stress job in that arena. The Supreme Court of Ohio concluded that the commission had abused its discretion by failing to explain how the claimant's nonsedentary work history equipped for a sedentary position in the food service industry finding that "[w]hile the commission is generally not required to enumerate the jobs of which it believes claimant to be capable, its assertion that claimant could do low stress sedentary work in an industry that is traditionally considered neither low stress nor sedentary requires further exploration." Id. at 659.
 {¶ 22} The present case differs from Mann in several important respects. First, the claimant in Mann was 59 years old while relator herein is 29 years old. Second, the commission did not opine that relator could perform sedentary work in a traditionally nonsedentary work industry. Instead, the commission found that relator could not return to his former position of employment, but that he could perform other jobs such as "surveillance system monitor, lens inspector, and final assembler of optical goods." Third, in the present case, the psychological evidence upon which the commission relied specifically indicated that relator could perform some work in low stress positions where he did not have to interact with other people. In Mann,
the only evidence that the claimant could perform low stress work came from a vocational report and not from a physician's report. For those reasons, the magistrate finds that this case differs from Mann and that Mann is not applicable here.
 {¶ 23} Based on the foregoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and the requested writ of mandamus should be denied.