DECISION
{¶ 1} Relator, Burns International (aka "Securitas"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding permanent total No. 05AP-488 disability ("PTD") compensation to Dorothy L. Smith, respondent-claimant, and to enter an order denying said compensation. [D1]
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. Relator has filed an objection to the magistrate's decision.
 {¶ 3} Relator's sole objection is that the commission could not rely upon the report of Ron M. Koppenhoefer, M.D., because that report was internally inconsistent. The commission counters that relator never administratively raised the issue of whether Dr. Koppenhoefer's report constituted "some evidence" to support the commission's order. It is well-settled law that issues not raised administratively cannot be raised in a mandamus action. State ex rel. Quarto Mining Co. v.Foreman (1997), 79 Ohio St.3d 78. Here, there is no evidence in the record that relator challenged Dr. Koppenhoefer's report as being internally inconsistent, and relator does not claim that it administratively challenged the report. Relator's failure to pursue this issue administratively bars this court from addressing it de novo in this action. See State ex rel. Tussing v. Indus. Comm., Franklin App. No. 05AP-178, 2006-Ohio-703, at ¶ 4 (relator's failure to raise the issue of internal inconsistency in a medical report administratively bars review upon mandamus).
 {¶ 4} Notwithstanding, a review of Dr. Koppenhoefer's medical report does not reveal any internal inconsistencies. A medical report can be so internally inconsistent that it cannot be some evidence supporting a commission decision. State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445. In the present case, although relator points out No. 05AP-488 that Dr. Koppenhoefer found claimant scored "normal," "functional," "stable," and "unremarkable" on several range of motion and other physical tests, Dr. Koppenhoefer also found no movement from L4 through S1, generalized discomfort during percussion and palpation, and truncal stiffness, and claimant reported increased pain in the supine position. Dr. Koppenhoefer also noted that claimant underwent a two-level fusion of the L4 through S1 but that the surgery had no effect upon her pain. The report also reveals that claimant had two injections in her back, received an epidural, and takes medication, all of which have given her no pain relief. Thus, although several tests related to her hips, knees, ankles, joints, muscle tone, upper extremities, and legs returned generally normal findings, these did not conflict with Dr. Koppenhoefer's conclusions related to claimant's spinal maladies and her pain severity. Therefore, even if relator would have raised this issue administratively and we were able to review it on mandamus, we find there were no internal inconsistencies in Dr. Koppenhoefer's medical reports.
 {¶ 5} After an examination of the magistrate's decision, an independent review of the record, pursuant to Civ. R. 53, and due consideration of relator's objection, we overrule the objection and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objection overruled; writ denied.
SADLER and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 6} In this original action, relator, Burns International (aka "Securitas"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent Dorothy L. Smith, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 7} 1. On December 18, 2000, Dorothy L. Smith ("claimant") sustained an industrial injury while employed as a security guard for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "lumbosacral strain; aggravation of spondylolisthesis at L5-S1; disc herniation at L5-S1," and is assigned claim number 00-812358.
 {¶ 8} 2. On March 28, 2003, claimant's physician of record, John M. Roberts, M.D., completed a "Physician's Report of WORK ABILITY" form based upon his examination of that date. On the form, Dr. Roberts indicated that, although claimant was unable to return to her former job, she was able to return to modified duty of a sedentary nature. He indicated that vocational rehabilitation was needed to assist claimant in returning to work and that claimant needed a consult for pain management. Dr. Roberts also opined that, as of March 28, 2003, the allowed conditions of the industrial claim had reached maximum medical improvement ("MMI").
 {¶ 9} 3. Apparently, Dr. Roberts' March 28, 2003 report prompted relator to have claimant examined by Bernard B. Bacevich, M.D., on March 31, 2003. In his report, Dr. Bacevich opined that "except for Vocational Rehabilitation, she is at maximum medical improvement." He found that claimant is "capable of doing sedentary work in which she has the opportunity to change positions," but "[h]er current condition does preclude her from returning to her former position of employment." Dr. Bacevich also wrote:
 * * * I do agree with Dr. Roberts that a Vocational Rehabilitation Evaluation is appropriate as it is my opinion that there are sedentary positions for which she is capable of gainful employment. I do not agree that a pain management consultation is necessary. * * *
 {¶ 10} 4. By letter dated March 31, 2003, relator informed claimant that her temporary total disability compensation was terminated effective March 28, 2003, based upon Dr. Roberts' opinion that she had reached MMI.
 {¶ 11} 5. According to an August 19, 2003 letter from the Bureau of Vocational Rehabilitation ("BVR"), claimant was determined to be "eligible" on May 13, 2003, and she attended an "Office procedures and Computer Technology assessment" at Ohio Valley Goodwill Industries ("Goodwill") from July 7 to July 18, 2003. The BVR letter states:
 * * * [Claimant] has now provided a note from her doctor indicating she is "restricted from repetitive motion for the next week." BVR is state and federally funded and we are not a fee-for-service provider. Due to the nature of her multiple disabilities, it is not certain whether BVR can impart any additional services towards competitive employment at this time.
 {¶ 12} 6. The BVR letter refers to a Goodwill report dated July 24, 2003. Captioned as a "Discharge Summary," the Goodwill report states in part:
 Dorothy was referred for a two-week clerical evaluation to determine her physical stamina, motivation to work, feasibility for training and employment in the clerical field, feasibility for telephone work, skills needed to be competitive, ability to perform major job duties, ability to work with supervision and co-workers, and overall soft skills.
 • Test results indicate that Dorothy does not have the academics required to be successful in a training or job setting where reading and comprehension are required for the completion of job tasks.
 • Dorothy demonstrated the stamina necessary to participate in training and employment. During the process of the evaluation, her motivation to be successful improved, as Dorothy appeared to learn more about herself and her own abilities.
 • Based on observations, specialized training techniques and discussions held with Supervisor Vander Woude, Dorothy has the ability to learn new skills when provided with verbal and demonstration forms of instruction.
 REASON FOR DISCHARGE:
 Completion of a clerical evaluation.
 RECOMMENDATIONS/REFERRALS:
 [One] Clarification of physical restrictions
 Rationale: Documentation is needed in order to learn fully the scope of Dorothy's carpel tunnel syndrome and other physical limitations. In addition, an assessment of physical restrictions would assist in determining an appropriate vocational goal.
 [Two] Benefits Analysis
 Rationale: Dorothy is unaware of how her benefits will be affected if she becomes employed. She is concerned about loosing medical benefits and her only means of income. An analysis would provide her with the information needed and determine whether or not she can work full or part time.
 [Three] Training/employment in an environment where hands-on training is provided.
 Rationale: Based on the test results, observations, introduction of specialized learning tools and discussions held with Dorothy, with accommodations in a training or employment environment, Dorothy could be successful in obtaining skills necessary to successfully maintain employment.
 {¶ 13} 7. The record contains claimant's affidavit executed on September 2, 2003. The affidavit states:
 [Two] That on May 13, 2003, you registered with the Ohio Bureau of Vocational Rehabilitation for vocational services in the above claim.
 [Three] That the OBVR referred me to Ohio Valley Goodwill Industry for a Office Procedure and Computer Technology Evaluation. I attended this evaluation on July 7, 2003 and July 18, 2003.
 [Four] After the Goodwill evaluation, my OBVR case worker, Kimberly Flores, referred me to the Ohio Department of Mental Retardation Services for vocational rehabilitation services for slow learners. As of September 2, 2003, I have completed the necessary registration documents [and] mailed them to this agency. I am waiting for a response on my eligibility for this agency's services.
 [Five] I have timely completed each and every request by any and all agencies in this matter
 {¶ 14} 8. On September 3, 2003, claimant moved for living maintenance compensation for the period May 13 to September 2, 2003 and continuing. Following a February 26, 2004 hearing, a district hearing officer ("DHO") granted living maintenance compensation only for the period that claimant attended the Goodwill evaluation, i.e., from July 7 to July 18, 2003. The DHO order was administratively affirmed by a staff hearing officer ("SHO") following an April 19, 2004 hearing. The SHO order states:
 The injured worker's motion is denied to the extent that it requests the payment of Living Maintenance Compensation from 05/13/2003 to 07/06/2003 and from 07/19/2003 through 09/02/2003 and continuing. The Staff Hearing Officer does not find evidence on file that the injured worker was participating in a rehabilitation plan during said periods.
 {¶ 15} 9. On December 9, 2003, claimant filed an application for PTD compensation.
 {¶ 16} 10. In response to the PTD application, relator had claimant examined by Jose Luis Chavez, M.D., on June 23, 2004. Dr. Chavez opined:
 * * * I believe that Ms. Smith is capable of employment at a sedentary to light level capacity. While she presents multiple limitations, there is a number of positions in the U.S. Economy, which will be compatible with her current skills and capacities. I believe that she will perform better in a position where she can sit and stand at will, where she is not required to climb ladders or stairs and where she is not required to lift in excess of 15 pounds in a regular manner. I believe that she can carry dockets, ledgers or tools. There is no limitations on fingering, feeling, seeing, hearing or speaking related to the recognized conditions.
 {¶ 17} 11. On July 30, 2004, at the commission's request, claimant was examined by Ron M. Koppenhoefer, M.D. Dr. Koppenhoefer reported:
 Based on my examination, I believe Ms. Smith has reached maximum medical improvement for the allowed conditions in claim 00-812358. I don't believe she is a candidate for any other surgical procedure. Other therapeutic treatments might be offered to her but I don't believe they will improve her functional state. These treatments might be the use of spinal cord stimulator. However, I don't believe this would improve her functional state or improve her abilities to function in the work place.
 Based on the AMA Guides, 4th
edition, she would have the following degree of impairment as it relates to the allowed conditions in this claim:
 [One] Lumbosacral strain — 0%. [Two] Aggravation of spondylolisthesis at L5-S1, disc herniation at L5-S1 will equal to a DRE lumbosacral category 4 degree of impairment or a 20% whole person impairment.
 After performing my history and physical and reviewing the medical records, it is my medical opinion that she is not capable to physical work activity at this time. I believe her allowed conditions would prevent her from even doing sedentary work activities.
 {¶ 18} 12. On a form separate from his narrative report, Dr. Koppenhoefer indicated by checkmark: "This injured worker is not capable of physical work activity." (Emphasis omitted.)
 {¶ 19} 13. Relator submitted an "employability assessment" or vocational report from Deanna Arbuckle of Parman Group. The report, dated August 19, 2004, states:
 Ms. Smith has demonstrated the ability to work in a position requiring above average aptitudes of clerical perception and average aptitudes of intelligence, verbal, numerical, motor coordination, finger dexterity, and manual dexterity. She has demonstrated high school reasoning, and 7th-8th grad[e] math and language skills. She has demonstrated temperaments for occupations requiring that dealing with people; attaining precise set limits, tolerances, and standards; performing a variety of duties; making judgments and decisions; and performing repetitive or short-cycle work. Specific skills have been developed in the Work Fields of cleaning; surface finishing; verbal recording — record keeping; system communicating; accommodating; merchandising sales; protection; and health caring-medical. Through his/her prior work activity, the claimant has gained experience with the following materials, products, subject matter or services (MPSMS): Fabrics and related; apparel; telephone communication; clerical sales except book keeping; meal services except domestic; janitorial and portering services; medical assistant, aide and attendant services; child and adult residential and day care services; and protective services except military.
 {¶ 20} 14. The commission requested an employability assessment report from Ted S. Macy, a vocational expert. In the Macy report, dated September 17, 2004, Macy indicates that, based upon Dr. Koppenhoefer's report, claimant is "not employable." However, based upon Dr. Chavez's report, Macy lists employment options.
 {¶ 21} 15. Following a December 9, 2004 hearing, an SHO issued an order awarding PTD compensation beginning March 28, 2003 based upon Dr. Koppenhoefer's report. The SHO order explains:
 All of the relevant medical and vocational reports on file were reviewed and considered in arriving at this decision. This order is based upon the report of Dr. Koppenhoefer dated 07/30/2004.
 The injured worker sustained the injury that is recognized in this claim on 12/18/2000 while employed as a security guard. The injury occurred when the injured worker fell down a flight of steps. The injured worker did return to work after the injury but was not able to continue working. The injured worker has undergone one surgical procedure in this claim. This surgery included a lumbar fusion. The injured worker was evaluated by the Bureau of Vocational Rehabilitation. BVR declined to offer services to the injured worker after this evaluation. The injured worker last worked on 01/18/2003.
 Dr. Ron Koppenhoefer, Physical Medicine and Rehabilitation, evaluated the injured worker on 07/30/2004 at the request of the Industrial Commission. In connection with this evaluation Dr. Koppenhoefer reviewed medical evidence on file and examined and interviewed the injured worker. The injured worker told Dr. Koppenhoefer that she has constant low back pain which can radiate into both thighs. The injured worker also told Dr. Koppenhoefer that she is able to walk only one city block and uses a cane when she goes out. Concerning the activities of daily living the injured worker advised that she is able to drive but does not have a car, that she is independent in bathing and dressing activities and that she is able to do household activities with some degree of discomfort. Dr. Koppenhoefer's physical examination findings are contained in his repot. After examining the injured worker Dr. Koppenhoefer opined that the injured worker has reached maximum medical improvement for each of the conditions that are recognized in her industrial claim. Dr. Koppenhoefer further opined that he does not believe that other surgical procedures or therapeutic treatments will improve the injured worker's functional state. Dr. Koppenhoefer opined that the injured worker is not capable of physical work activity. Dr. Koppenhoefer advised that the allowed conditions would prevent the injured worker from doing even sedentary work activities.
 The Staff Hearing Officer finds that the injured worker has reached maximum medical improvement for each of the allowed conditions in this claim. The Staff Hearing Officer further finds, based upon the report of Dr. Koppenhoefer, that the allowed conditions so severely restrict the injured worker's functional capacity as to render her incapable of performing any sustained remunerative employment. The Staff Hearing Officer therefore finds that the injured worker is permanently and totally disabled. The injured worker's Application for Permanent Total Disability, filed 12/12/2003, is therefore granted. Permanent and total disability compensation is hereby awarded from 03/28/2003[.] * * *
 {¶ 22} 16. On May 16, 2005, relator, Burns International (aka "Securitas"), filed this mandamus action.
Conclusions of Law:
 {¶ 23} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 24} Ohio Adm. Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(D) sets forth guidelines for the adjudication of PTD applications.
Ohio Adm. Code 4121-3-34(D)(2) states:
 (a) If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.
 (b) If, after hearing, the adjudicator finds that the injured work, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
 The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained with the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those other skills which may be reasonably developed. * * *
 {¶ 25} In its order awarding PTD compensation, the commission relied exclusively upon the report of Dr. Koppenhoefer to support its finding that claimant is medically unable to perform any sustained remunerative employment.
 {¶ 26} Here, relator does not challenge Dr. Koppenhoefer's report as constituting some evidence supporting the commission's finding that the claimant is medically unable to perform all sustained remunerative employment. Indeed, Dr. Koppenhoefer's report is some evidence upon which the commission relied to support its finding.
 {¶ 27} Because the commission determined that the industrial injury prohibits all sustained remunerative employment, it was not necessary for the commission to consider the nonmedical factors. Ohio Adm. Code 4121-3-34(D)(2)(a) and (b); see, also,State ex rel. Galion Mfg. Div. Dresser Industries, Inc. v. Haygood
(1991), 60 Ohio St.3d 38.
 {¶ 28} Because the commission's PTD determination is supported by Dr. Koppenhoefer's report as the some evidence upon which the commission relied, the commission's PTD award must stand. Galion.
 {¶ 29} Here, citing State ex rel. Wilson v. Indus. Comm. (1997),80 Ohio St.3d 250, and other cases, relator argues that the commission's order is an abuse of discretion because the commission allegedly failed to sufficiently evaluate claimant's efforts at vocational rehabilitation. Relator's reliance upon Wilson and other cases is misplaced. Contrary to relator's suggestion, those cases do not stand for the proposition that the commission must evaluate the nonmedical factors even where it determines, based upon some evidence cited, that the claimant is medically unable to perform all sustained remunerative employment.
 {¶ 30} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.