[Cite as *State ex rel. Woodman v. Ohio Public Emp. Retirement Sys.*, 2014-Ohio-710.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Raeanne Woodman, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 13AP-406 |
| | : | |
| The Ohio Public Employment<br>Retirement System [and]<br>Retirement Board et. al, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on February 27, 2014

*Daniel H. Klos*, for relator.

*Michael DeWine*, Attorney General, and *Matthew T. Green,* for respondents.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Raeanne Woodman filed this action in mandamus, seeking a writ to compel the Ohio Employees Retirement Board to grant her disability benefits.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence, which included the certified record of proceedings, and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we deny the request for a writ.

{¶ 3}   Counsel for Woodman has filed objections to the magistrate's decision.  The case is now before the court for a full, independent review.

{¶ 4}   Woodman suffered a hemorrhage of the right pons.   Between the hemorrhage and the surgery to address it, she was left paralyzed on the left side of her body requiring a wheelchair for her to get around.  She has had her vision affected and her speech is somewhat slurred due to the paralysis of the left side of her face.

{¶ 5}   To its credit, The Ohio State University ("OSU") hired her to a part-time position as a receptionist in the English Department.  To its discredit, OSU terminated the position 12 years later.  Woodman then applied for disability benefits through the Ohio Public Employees Retirement System ("OPERS").

{¶ 6}   The issue has distilled to the question of whether Woodman's condition has worsened since her position as a receptionist was eliminated.  Nothing in the record before us indicates that she did a less than admirable job as a receptionist while the position at OSU existed.  If she could no longer do the job now it is because her condition worsened.

{¶ 7}   As might be expected, the record before us contains conflicting medical reports.  Some say her condition is basically the same.  Some say her condition has deteriorated.  The OPERS board relied upon the reports which said she could still do her job and therefore refused to grant disability benefits.  As outlined below, the reports upon which OPERS relied had a defect on a critical issue.

{¶ 8}   Counsel for Woodman has set forth these objections to the magistrate's decision which recommends that no writ issue.  The objections are:

> **Objection 1. The Magistrate Applied The Wrong Standard For Abuse Of Discretion.**
>
> **Objection 2. The Magistrate Failed To Find Abuse Of Discretion Based On Dr. Shadel's Report.**
>
> **Objection 3. The Magistrate Failed To Find Abuse Of Discretion Based On Subsequent Respondent Medical Reports.**

{¶ 9}   As to the first objection, the governing statute and portions of the Ohio Administrative Code have now developed to the point that OPERS board must only say

grant or deny benefits with no explanation required. A review of that decision implies an abuse of discretion standard. The decision by the OPERS board must be unreasonable, arbitrary or unconscionable to be overturned. The magistrate's decision recommends that we as a court find no abuse of discretion because there is conflicting evidence in the record. We as a court must review the evidence to ascertain if we agree with that assessment.

{¶ 10} We do not feel we are compelled to decide if the standard is the some evidence standard, commonly applied in workers' compensation cases, or sufficient evidence standard. Our standard is the abuse of discretion standard. In this context, we must look at all the evidence and decide if the OPERS board abused its discretion in deciding the way it did. Stated differently, was its decision arbitrary, unreasonable or unconscionable given the evidence before it? We feel the magistrate applied this standard, so the first objection is overruled.

{¶ 11} The second and third objections require us to independently apply the abuse of discretion standard, especially to the medical evidence before OPERS.

{¶ 12} Woodman submitted as part of her application for disability benefits, a paragraph in which she indicated that both her hearing and her eyesight had worsened. She claimed that she could no longer sort voices out from background noise making it impossible for her to hear what students and co-workers were saying. She claimed that she could see things clearly only when they were five inches or less from her face. She also claimed that her handwriting had worsened to the point that no one could read it, including herself.

{¶ 13} Donald Mark, M.D., as Woodman's treating physician, submitted a report which supported her application for disability benefits. The report, after listing the various problems which flowed from the hemorrhage of her right pons also indicated that she had developed mild carpal tunnel syndrome, as shown by an EMG performed in 2007. Dr Mack reported that Woodman became disabled as of June 29, 2011. Various reports of medical specialists from OSU supporting his opinion were submitted, attached to his report.

{¶ 14} Processing of the application was initially delayed because OPERS wanted a document showing Woodman's date of birth. OPERS also requested a document with a detailed job description for Woodman as a receptionist.

{¶ 15} OPERS requested an independent medical examination which was scheduled with MLS National Medical Evaluation Service and specifically with Robert Shadel, M.D. Dr. Shadel reported "she appears able to fulfill the essential job functions of her job." Dr. Shadel noted that Woodman could see out of only her left eye, the other eye's lens being opaque to the point of not transmitting light. Her hearing was evaluated in Dr. Shadel's examination room, not in a room which involved background noise. Dr. Shadel acknowledged a hearing deficit in Woodman's right ear.

{¶ 16} After OPERS initially denied disability benefits, Woodman retained counsel who arranged for a second independent medical examination ("IME"). This IME was performed by Gerald S. Steiman, M.D. Dr. Steiman, after noting Woodman's blindness in her right eye, also noted that she had difficulty hearing. Specifically, he noted she had trouble hearing if there was other noise in the room, including air conditioners, fans or other people talking. Dr. Steiman noted that ENT testing had occurred on April 4, 2012 which "revealed reduced hearing. There was moderate-severe right neurosensory hearing loss with speech recognition in the fair-good range on the left but poor on the right. Otoacoustic emission testing revealed absent in all frequencies in the right ear with robust responses in the left ear."

{¶ 17} Again, this is testing in a clinical environment, not in a work environment with background noise. The testing was done with the use of headphones. Dr. Steiman indicated "her auditory testing is consistent with her subjective complaints of difficulty understanding in a classroom setting or in a crowd."

{¶ 18} An IME with Eric Shaub was scheduled but no report from that scheduled appointment is in the record before us. Instead, a file review done by Elena Antonelli, M.D. is present. Dr. Antonelli's file review did not indicate the presence of a report from Dr. Shaub.

{¶ 19} Dr. Antonelli did not address the problem of Woodman's hearing in a normal work environment. All the medical evidence of her hearing in a normal work environment indicated she had significant difficulty hearing if there was any background

noise. The only evidence contrary was evidence obtained in a physician's examining room or during testing with headphones turned on.

{¶ 20} Woodman had informed OPERS and the IME doctors who examined her at OPERS's request that she had major trouble hearing in her environment at the OSU Department of English. None of the IMEs tested her in anything approximating a normal work environment with background noise. The doctors who evaluated her with a view to such a work environment all concluded that she could not do her work any more.

{¶ 21} Based upon this hole in the medical evidence, the decision by OPERS was arbitrary and unreasonable. There was simply no evidence to support a finding that her hearing allowed her to return to her work as a receptionist.

{¶ 22} We sustain the objection to the magistrate's decision. As a result of our independent analysis, we grant a writ of mandamus compelling the OPERS board to vacate its denial of disability benefits for Woodman and compelling OPERS to grant the benefits effective November 2011.

*Objections sustained; writ granted.*

CONNOR, J., concurs.
SADLER, P.J., concurs in part and dissents in part.

SADLER, P.J., concurring in part and dissenting in part.

{¶ 23} I respectfully concur in part and dissent in part.

{¶ 24} I concur in the majority resolution of relator's first objection. As to the remaining objections, the majority recognizes that "the record before us contains conflicting medical reports" and that the "OPERS board relied upon the reports which said [relator] could still do her job," but concludes "the reports upon which OPERS relied had a defect on a critical issue." Specifically, the majority sua sponte determined that the medical reports of Drs. Shadel, Steiman, and Anontelli cannot constitute evidence upon which OPERS can rely because "[n]one of the IME's tested [relator] in anything approximating a normal work environment with background noise."

{¶ 25} There is no evidence in the record that relator challenged, either administratively or in this mandamus action, the testing environment of the medical experts. Thus, this court is barred from addressing this issue de novo, and we cannot use this issue as a basis for granting a writ of mandamus in the matter herein. *State ex rel.*

*Burns Internatl. v. Smith*, 10th Dist. No. 05AP-488, 2006-Ohio-6731, ¶ 3; *State ex rel. Tussing v. Indus. Comm.*, 10th Dist. No. 05AP-178, 2006-Ohio-703, ¶ 4.

{¶ 26} Nonetheless, the majority determined because relator's "hearing was evaluated in Dr. Shadel's examination room, not in a room which involved background noise," his report cannot be relied upon. However, the record is bereft of any evidence that Dr. Shadel's testing environment was inadequate. Neither Dr. Steiman nor Dr. Antonelli criticized or challenged the testing environment utilized by Dr. Shadel. Indeed, Dr. Antonelli's own report relied upon the report of Dr. Shadel in forming her own conclusions.

{¶ 27} In my view, the majority sua sponte determined that Dr. Shadel's testing methods were so inadequate that their results and his opinions drawn therefrom cannot constitute some evidence because they are wholly incredible and should be given no weight. The role of this court is not to reweigh the evidence before the commission, as it is well-settled that questions of credibility and the weight to be given the evidence are clearly within the discretion of the commission as factfinder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 28} There is no evidence in the record that the testing procedures did not account for workplace background noise. In my view, the record does demonstrate that the physicians considered relator's work environment when her hearing was tested. When specifically asked if relator's "hearing loss affect[s] her ability to perform the necessary job functions pertaining to a role of an office assistant," Dr. Shadel responded relator has "demonstrated adequate hearing in the examination room to allow her to perform the necessary job functions of office assistant." (Dr. Shadel report, 5.) Thus, I would find both Drs. Shadel and Antonelli's reports considered relator's work environment and constitute some evidence that relator was not permanently disabled from her position as a part-time receptionist.

{¶ 29} Accordingly, I would determine OPERS did not abuse its discretion in relying on the reports of Drs. Shadel and Antonelli and would overrule relator's objections, adopt the decision of the magistrate, and deny the requested writ of mandamus.

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State of Ohio ex rel.                  :
Raeanne Woodman,

                                  :

         Relator,

                                    :

v.                                          No. 13AP-406

                                    :

The Ohio Public Employment                (REGULAR CALENDAR)
Retirement System  [and]         :
Retirement Board et. al,

                                    :

         Respondents.

                                    :

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on November 13, 2013

---

*Daniel H. Klos*, for relator.

*Michael DeWine*, Attorney General, and *Matthew T. Green,* for respondents.

---

### IN MANDAMUS

{¶ 30} Relator, Raeanne Woodman, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Ohio Employees Retirement Board ("PERB") to vacate its order which denied her application for disability benefits and ordering PERB to find that she is entitled to those benefits.

Findings of Fact:

{¶ 31} 1. Prior to her employment with a state agency, relator suffered a significant medical event in 1989. Specifically:

> In 1989, Relator suffered a hemorrhage in the right pons, which is located close to the brain stem. Two years later surgeons removed Relator's right pons. This surgery, coupled with the damage caused by the original hemorrhage, left her paralyzed on the left side of her body, with limited vision, and a speech impediment. These conditions have worsened over the years. Raeanne Woodman must use a wheelchair for the rest of her life for all mobility.

{¶ 32} 2. Relator was hired as a receptionist in the English Department of The Ohio State University ("OSU") in 1999. This was a part-time position requiring relator to work 20 hours per week.

{¶ 33} 3. Relator's position was eliminated in June 2011.

{¶ 34} 4. In October 2011, relator submitted her disability application to the Public Employees Retirement System ("PERS"). In support of her application, relator submitted the October 13, 2011 report of her attending physician, Donald Mack, M.D., who noted the following disabling conditions:

> [One] Pontine Hemorrhage with [left] hemiparisis. 1989
> [Two] Wheel chair status
> [Three] Carpal Tunnel Syndrome
> [Four] Decreased Hearing

Elsewhere in his report, Dr. Mack opined that relator could never lift objects from floor to knuckle or from floor to shoulder, never walk, climb, balance, stoop, kneel, crouch, crawl or stand. He indicated that she could occasionally lift, carry or push up to ten pounds on the right side only and that she could constantly sit. He concluded that he did not expect that she would be able to return to work with OSU.

{¶ 35} 5. Relator underwent an independent medical examination with Robert F. Shadel, M.D. In his January 8, 2012 report, Dr. Shadel identified the records which he reviewed including a description of relator's job, an MRI of her brain from June 2007, progress notes, and the attending physician's report of Dr. Mack. Dr. Shadel noted the following upon physical examination:

> Ms. Woodman is 48 years old. She is as stated 5 feet 9 inches and 175 pounds. Her blood pressure is 150/90. Ms. Woodman is bright and alert. Her speech is normal and clear. Her affect appears normal. She appears in a wheelchair and notes that her balance is too bad to attempt to stand

and/or walk. She has obvious facial paresis on the right side with loss of infraorbital and supraorbital facial lines. She has decreased facial muscle motions on the right. She has loss of right eye extraocular movements in lateral gaze and upper gaze. She has clouding of right pupil through which there is basically no light transmission.

She has full neck range of motion. She has actually quite good upper extremity range of motion, essentially equal shoulder, elbow, wrist, and hand range of motion and no discernible strength loss into her left upper extremity on resisted muscular testing. She has intact reflexes in biceps and triceps. She has negative upper motor neuron signs with Hoffman sign. She has quite good lower extremity strength with approximately equal right to left leg strength to resisted testing for hip flexion, knee extension, and knee flexion. Her reflexes are 1+ in knees and ankles. She has some mild swelling in the lower left leg without any pitting edema.

Thereafter, Dr. Shadel opined that relator was not permanently disabled from the performance of her occupation as a public employee, stating:

Ms. Woodman is a bright and articulate woman, who in spite of her serious and significant neurological insult from pontine hemorrhage, has been able to work in her job at OSU since January 1999 and left when she was laid off due to her job termination, not due to any new or worsening neurologic dysfunctions. In my medical opinion based on her review of her job, interview with her, and examination, she appears able to fulfill the essential job functions of her job.

* * *

Ms. Woodman has been very stable and quite functional since her pontine hemorrhage and subsequent operation. * * * Her functioning has appeared stable and does not appear that there is any treatment that would further resolve or improve her conditions in any significant medical manner.

* * *

Ms. Woodman while having a serious neurologic insult from pontine hemorrhage and surgeries, does not have any permanent disabling conditions directly due to a pontine hemorrhage and subsequent facial paresis.

* * *

The objective medical evidence demonstrates Ms. Woodman to be well functioning neurologically to the extent consistent with her job as office assistance/receptionist. Her expected treatment includes ongoing exercises as she has been doing.

* * *

Current treatment includes monitoring Ms. Woodman for any neurological dysfunction, progression, and maintaining function in her right hand from diagnosed carpal tunnel syndrome.

* * *

Subjective complaints are primarily of poor hearing hemiplegia and poor vision are not reflected by objective findings of disabling hearing or vision dysfunction or by objective findings of extremity functioning that does not appear to be significant to a level of causing any disability.

* * *

Ms. Woodman is a bright, upbeat, and articulate woman, who has some definite limitations who hears well, communicates well, and has a monovision in her left eye to allow her the level of good functioning in office environment. Objective findings do not find any significant hemiplegia in extremities. Objective findings do not find objective findings of significant mental or neurologic dysfunction outside of affected central nervous system and cranial nerves. In my medical opinion, observed activities and behavior of Ms. Woodman correlate with objective clinical findings.

* * *

In my medical opinion, Ms. Woodman has demonstrated adequate hearing in the examination room to allow her to perform the necessary job functions of office assistant. She is able to hear conversation well and accurately. As I have noted above, she is bright and articulate and has no trouble responding to spoken voice in appropriate verbal manner. Thus, in my medical opinion, her hearing deficit primarily in right ear does not disable her from the job of office assistant.

{¶ 36} 6. Thereafter, Jeffrey Deitch, D.O., reviewed relator's claim file and recommended that her application be denied.

{¶ 37} 7. Relator's claim file was reviewed by one of PERS' medical advisors, Andrew Smith, M.D., and he also recommended the denial of relator's application for disability benefits.

{¶ 38} 8. In a letter dated February 16, 2012, relator was notified that PERB had reviewed her disability benefit application, including all medical documentation submitted with her application, and had concluded that she was not considered to be permanently disabled from the performance of her duties as an office assistant.

{¶ 39} 9. Relator timely notified PERS of her intent to appeal the PERB's initial decision denying her disability benefits. In support of her appeal, relator submitted additional medical evidence, including a May 31, 2012 report from Gerald S. Steiman, M.D., who stated:

> The cranial nerve exam reveals opacity of the right cornea consistent with exposure keratitis. There is hand movement identification within the right eye but difficulty with finger counting. Within the left eye she is able to read size 12 font when holding it close to her face. She has a dense right facial hemiparesis with reduced sensation on the right side. There is slurred speech secondary to the facial hemiparesis. Her labial, lingual, and guttural sounds are normal. She is able to hear conversational voice.
>
> The motor exam reveals 4/5 strength on the left side with marked spasticity. She has significant dysmetria with finger-nose and heel-shin testing on the left. She uses the left hand for an assist. The grip effort was 4 PSI in her right hand but absent in the left hand. The right and left mid forearm circumferences are 23.0 versus 21.0 cm. Both mid calf circumferences are 33.5 cm.
>
> Dr. Steiman opined that relator was unable to perform her job.

{¶ 40} 10. Although PERS initially declined to accept or review the additional material submitted by relator, the parties subsequently reached an agreement whereby her additional medical documentation would be considered as part of the appeals process.

{¶ 41} 11. An independent peer review was conducted by Elana Antonelli, M.D. In her November 27, 2012 report, Dr. Antonelli identified the medical records which she reviewed and ultimately concluded that relator was not mentally or physically incapacitated from the performance of her job duties, stating:

> There is no evidence that the claimant is disabled from the performance of her own occupation, which is a sedentary job as a receptionist. There is no evidence that the claimant has significantly worsened since she was last able to do her job and she was terminated from her job due to termination of the job itself and not due to disability. There is no evidence that she is unable to be accommodated sufficiently to be able to do her job as she has done in the past.

{¶ 42} 12. Dr. Deitch again reviewed relator's file. In his November 28, 2012 report, Dr. Deitch stated:

> There is no evidence that the claimant has significantly worsened since she was last able to do her job and she was terminated from her job due to termination of her job itself and not due to disability. Claimant's current permanent impairing diagnoses include difficulties with her vision on the right and her hearing, in addition to being wheelchair bound although she has been highly functional despite these problems in the past. Recommend to uphold appeal.

> Dr. Deitch recommended that an additional review be conducted.

{¶ 43} 13. In a letter dated December 20, 2012, relator was notified that PERB had voted to uphold its previous denial of her application for disability benefits.

{¶ 44} 14. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 45} Relator argues that the medical evidence clearly establishes that her disabling medical condition continues to worsen and that she can no longer perform the duties of a receptionist for OSU where she was employed.

{¶ 46} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 47} "[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14. The determination of whether a retirement system member is entitled to the continued receipt of disability-retirement benefits is within the exclusive authority of the retirement board, R.C. 145.362, and the board's denial of an appeal from the termination of these benefits is final and not subject to appeal. See Ohio Adm.Code 145-2-23(C)(3).

{¶ 48} Because there is no right to appeal the retirement board's decision terminating disability-retirement benefits, mandamus is an appropriate remedy. *State ex rel. Pontillo v. Pub. Emps. Retirement Sys. Bd.,* 98 Ohio St.3d 500, 2003-Ohio-2120, ¶ 23; *State ex rel. Morgan v. State Teachers Retirement Bd.,* 121 Ohio St.3d 324, 2009-Ohio-591, ¶ 20.

{¶ 49} "It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus." (Emphasis deleted.) *Pipoly* at ¶ 18. There is no statute imposing a duty on the retirement board to explain its decision terminating disability-retirement benefits.

{¶ 50} In addition, although former Ohio Adm.Code 145-11-02 specified that the retirement board must state "its basis of denial" of disability-retirement benefits, that administrative rule was repealed on January 1, 2003, and the new version of the rule has no such requirement. Ohio Adm.Code 145-2-23. *See Hamby v. Ohio Pub. Emps. Retirement Sys.,* 10th District No. 08AP-298, 2008-Ohio-5068, ¶ 17; 2002-2003 Ohio Monthly Record 1304.

{¶ 51} Therefore, the retirement board had no duty under statute or administrative rule to specify the evidence it relied upon or to explain its reasons for terminating Cydrus's disability-retirement benefits. *See, e.g. State ex rel. Marchiano v. School Emps. Retirement Sys.,* 121 Ohio St.3d 139, 2009-Ohio-307, ¶ 23.

{¶ 52} To be entitled to the requested writ of mandamus to compel the retirement board to vacate its decision terminating her disability-retirement benefits, relator must establish that the board abused its discretion. *See State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 25. To prove an abuse of discretion, she must show that the retirement board's decision was unreasonable, arbitrary, or unconscionable. *Id.*

{¶ 53} Relator argues that her evidence substantiating that she is unable to perform her job is superior to the evidence in the record indicating that she can perform her job. Relator cites the Supreme Court of Ohio's decision in *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.,* 127 Ohio St.3d 257, 2010-Ohio-5770, ¶ 28, and argues that the court has modified the standard to be applied on review from a "some evidence"

standard to one of "sufficient evidence."  Relator points to the following sentence from the *Cydrus* decision:

> In addition, the retirement board does not abuse its discretion if there is sufficient evidence to support its determination. *State ex rel. Lucas Cty. Bd. of Mental Retardation & Dev. Disabilities v. Pub. Emps. Retirement Bd.,* 123 Ohio St.3d 146, 2009-Ohio-4694, 914 N.E.2d 1038, ¶ 16.

{¶ 54} The magistrate finds that relator is incorrect to assert that the court has modified or otherwise changed the standard of review.  Relator is taking one sentence out of context.  Instead, in the *Cydrus* case, the court cited the same cases the magistrate has cited in this decision for the standard of review.  *See* ¶ 12-17.

{¶ 55} Relator spends a great deal of time criticizing the report of Dr. Shadel and arguing that her medical evidence is superior.  However, when considering the entire record, the magistrate notes that five separate doctors who reviewed relator's file determined that she was not permanently disabled from her position as a part-time receptionist.  To the extent that relator asserts that her evidence is superior, it is not the province of this court to reweigh the medical evidence or to substitute its judgment in place of the board.  *See  State ex rel. Davis v. School Emps. Retirement Sys.,* 10th Dist. No. 08AP-214, 2008-Ohio-4719, ¶ 19, ("[w]hile recognizing the significant difference in the volume of medical evidence offered supporting appellant's claim that she is disabled, versus Dr. Vaughan's report concluding that she is not, we simply cannot say that SERS abused its discretion by giving greater weight to Dr. Vaughan's opinion than to the opinions of appellant's treating physicians on appellant's initial application, because SERS has the discretion to choose between conflicting evidence"); *State ex rel. Mullenax v. State Teacher[s] Retirement Sys. Bd.,* 10th Dist. No. 08AP-116, 2008-Ohio-4261, ¶ 18, ("[w]here the medical evidence conflicts in a matter concerning a benefits determination, we cannot substitute our judgment for that of appellee absent an abuse of discretion"); *State ex rel. Thomas v. Public Emps. Retirement Sys. of Ohio,* 10th Dist. No. 03AP-137, 2004-Ohio-1403; *State ex rel. Bruce v. State Teachers Retirement Bd. of Ohio,* 10th Dist. No. 02AP-1059, 2003-Ohio-4181, ¶ 7, ("We find that relator's objections in fact invite us to weigh the evidence in the impermissible manner objected to by respondent.  'Where the

evidence before the Board is conflicting, a court cannot substitute its judgment for that of the decision-making body and find an abuse of discretion.' ").

{¶ 56} Relator is asking this court to reweigh the evidence, find her evidence to be more persuasive, and order respondent to grant her disability application. That is not the proper standard of review here.

{¶ 57} In the present case, relator suffered a significant disabling condition long before she began her employment with OSU. Up until the day her position was eliminated, relator was able to perform the duties of her job as a part-time receptionist. Although there is some evidence in the record which would indicate that relator's disabling condition continues to slowly worsen, the magistrate finds that PERB did not abuse its discretion when it determined that relator had not demonstrated that her disabling condition was preventing her from being able to perform her job duties as a part-time receptionist.

{¶ 58} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that PERB abused its discretion when it denied her disability application and this court should deny her request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA BROOKS


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).