DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION.
{¶ 1} Relator, Debra F. Thomas, ("relator"), filed this original action seeking a writ of mandamus ordering respondents Public Employees Retirement System of Ohio ("PERS") and Public Employees Retirement Board ("board") to vacate their decision denying her application for disability retirement benefits and to issue a new order granting the same application. Alternatively, relator seeks a writ of mandamus ordering the board to issue a new order providing an adequate explanation of the rationale in support of its decision.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found the commission did not abuse its discretion by denying relator's application for disability retirement benefits. The magistrate determined that the board satisfied its obligation to explain the basis of its decision, and that the board's decision was supported by "some evidence." The magistrate rejected the contention that the medical reports relator submitted "greatly overshadowed" the medical reports prepared by the medical examiners appointed by the board. Therefore, the magistrate recommended the court deny relator's request for a writ of mandamus. Relator timely filed an objection to the magistrate's decision.
 {¶ 3} Relator maintains the board improperly disregarded the medical evidence of Randall Hawkins, M.D., Robert M. Hess, M.D., and Beal D. Lowe, Ph.D. Relator submits the board's decision does not explain why it has accepted one medical report over "equally competent medical reports in the record," and that the magistrate erred in finding that the board satisfied its obligation to explain the basis of its decision. (Appellant's brief, at 4.)
 {¶ 4} When the board denies an application for disability retirement benefits, it shall state "its basis of denial." Former Ohio Adm. Code 145-11-02(B)(3). This court has held that, in order to properly state its basis of denial, the board must identify the evidence it relied upon and briefly explain its decision.State ex rel. Green v. Pub. Emp. Retirement Sys. (June 22, 1999), Franklin App. No. 98AP-567. In order to obtain a writ of mandamus, relator must establish that she has a clear legal right to the relief requested, that PERS has a clear legal duty to grant it, and that no adequate remedy at law exists to vindicate the claimed right. State ex rel. Stiles v. School Emp.Retirement Sys., Franklin App. No. 02AP-1333, 2003-Ohio-4137, citing State ex rel. Hattie v. Goldhardt (1994),69 Ohio St.3d 123, 125.
 {¶ 5} Relator contends, "[i]n essence, the Magistrate's decision holds that, so long as PERS recites a medical report in its decision, the requirement of Ohio Adm. Code 145-11-02(B)(3) is met. Further expanding the Magistrate's holding, PERS is not required to perform an independent analysis of the medical evidence, so long as PERS recites the text of the medical report it chose to rely upon." (Relator's brief, at 3.) In the above characterization of the magistrate's decision, relator vastly oversimplifies and largely ignores the legal analysis set forth therein.
 {¶ 6} Contrary to relator's claims, the magistrate did not
state that the board is not required to perform an independent analysis of the medical evidence or that it could satisfy its duty to briefly explain the basis of its decision by merely identifying the medical report upon which it relied. The magistrate did correctly explain that the board's brief explanation of the reasons for its decision denying relator's application for disability retirement benefits is not as extensive an analysis as is required when the Industrial Commission of Ohio denies a worker's application for permanent total disability compensation. See, also, State ex rel. Schmidtv. School Emp. Retirement Sys., 150 Ohio App.3d 597, at ¶ 72-75, 2002-Ohio-6757 (explaining how standard to determine eligibility for disability retirement benefits differs from standard to determine eligibility for workers' compensation benefits). In fact, the magistrate's decision sets forth the portions of the board's decisions, which identify the sections of the medical reports the board found to be persuasive.
 {¶ 7} In its initial decision denying relator's application, the board's order states it considered the medical reports of Dr. Hawkins, relator's treating physician, and Dr. James J. Powers, a competent disinterested physician who examined relator at the board's request. See R.C. 145.35(E). The board placed greater weight on the report of Dr. Powers, who determined that relator was not permanently disabled from the duties of her former position. The board is not required to accord any greater weight to a treating physician's report than to the report prepared by a physician appointed by the board pursuant to R.C. 145.35(E). Cf.,Stiles, supra, citing State ex rel. Schwaben v. School Emp.Retirement Sys. (1996), 76 Ohio St.3d 280, 281; State ex rel.Reder v. Pub. Emp. Retirement Sys. (Dec.12, 2000), Franklin App. No. 00AP-447 (applying Schwaben).
 {¶ 8} On appeal to the board, relator submitted a report from Dr. Lowe, who provided a vocational psychological assessment of relator. Relator also submitted an additional medical report from Dr. Hess, who concluded that relator was permanently disabled. The board obtained an examination from a second physician, Dr. Timothy Fallon. Dr. Fallon determined that relator did not present with evidence of an ongoing condition that precludes her from returning to her former position. Dr. Fallon noted that although relator had chosen to be treated conservatively, her condition is likely treatable while she continues in her work activity. Again, the board is not required to accord any greater weight to Dr. Hess' report than to the report prepared by Dr. Fallon. Stiles, supra.
 {¶ 9} The determination of whether relator is entitled to disability retirement benefits is solely within the province of the board. State ex rel. Pontillo v. Pub. Emp. Retirement Sys.Bd., Franklin App. No. 01AP-1333, 2002-Ohio-4722, applying Fairv. School Emp. Retirement Sys. (1978), 53 Ohio St.2d 118. We review the board's decision determining relator's application for disability retirement benefits on an abuse of discretion standard. State ex rel. McMaster v. School Emp. Retirement Sys.
(1994), 69 Ohio St.3d 130, 134. In order to constitute an abuse of discretion, the court's decision must be so grossly inconsistent with fact or logic that it displays "not the exercise of reason but instead passion or bias." Vaught v.Cleveland Clinic Found., 98 Ohio St.3d 485, 2003-Ohio-2181, at ¶13. Where the medical evidence before the board is conflicting, the court cannot substitute its judgment for that of the board absent an abuse of discretion. Cf., State ex rel. Bruce v. StateTeachers Retirement Bd., 153 Ohio App.3d 589, 2003-Ohio-4181, at ¶ 7.
 {¶ 10} In mandamus, the court does not reweigh the evidence.McMaster; Schwaben, supra. The board's initial decision sets forth the basis for its denial of relator's application for disability retirement benefits, identifies the evidence it relied upon, and briefly explains its decision. Green, supra. The board's decision on appeal demonstrates it considered relator's additional medical evidence and sought the opinion of a second physician.
 {¶ 11} Relator contends the board should have explained why it accepted some medical reports over other reports which relator characterizes as "equally competent." Only the board may determine the weight of the evidence. Pontillo, supra. In essence, relator asks this court to order the board to explain why it has not abused its discretion in its denial of disability retirement benefits, which is the inverse of the applicable standard in mandamus. In order to obtain the writ she seeks, relator has the burden to demonstrate an abuse of discretion on the part of the board, and she has failed to do so. There is no indication in the record that, in reaching its decision, the board failed to consider the evidence submitted by relator. Accordingly, relator's objection is overruled.
 {¶ 12} Following an independent review of the record, we find the magistrate has properly determined the facts and applied the appropriate legal standards. We therefore adopt the magistrate's decision as our own, including the findings of fact and conclusions of law it contains. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objection overruled; writ of mandamus denied.
Lazarus, P.J., and Bowman, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Debra F. Thomas, : Relator, : v. : No. 03AP-137 Public Employees Retirement : (REGULAR CALENDAR) System of Ohio and Public Employees : Retirement Board, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 27, 2003 IN MANDAMUS {¶ 13} In this original action in mandamus, relator, Debra F. Thomas, asks the court to issue a writ compelling respondents, Ohio Public Employees Retirement System ("PERS") and Ohio Public Employees Retirement Board ("board"), to vacate the board's decision denying disability retirement benefits and to issue a new decision that grants such benefits or, in the alternative, that provides an adequate explanation of the board's rationale.
 Findings of Fact {¶ 14} 1. Beginning in July 1992, Debra F. Thomas, relator herein, was employed as a rehabilitation aide for the Gallipolis Developmental Center. A job description is provided in the record.
 {¶ 15} 2. Relator ceased working at this job in late 1999 and was compensated through January 5, 2000.
 {¶ 16} 3. In August 2001, relator filed a PERS application for disability retirement with a medical opinion from Randall Hawkins, M.D., in which he reported that relator had persistent complaints of chronic pain due to osteophytic ridging of the cervical spine, disc bulging, disc narrowing at L5-S1, and osteophytes at L3-4. Dr. Hawkins concluded that relator's chronic pain caused her to be permanently incapacitated from performing her duties.
 {¶ 17} 4. In February 2002, relator was examined at the request of PERS by James J. Powers, M.D. Relator described her duties as a rehabilitation aide and recounted injuries she had sustained in that work, one when she was kicked by a mentally retarded client and another when she was lifting a client from the floor. Dr. Powers described in detail his findings upon examination and stated the following conclusions:
 {¶ 18} "I think that we are most likely dealing with myofascial pain. She certainly has been off work now for a significant period of time, but I am not really seeing objective physical findings that would suggest that it would be unsafe for her to perform the duties of her job. Clearly, stopping smoking, tricyclics, and anti-inflammatory medication are all things that sometimes have a benefit in this problem. Low-impact aerobic exercise is mandatory.
 {¶ 19} "I would not see that this problem should take over a year to come under control with an effective pain management program. I, therefore, do not feel that she is permanently disabled from her job. * * *"
 {¶ 20} 5. In March 2002, this report was reviewed on behalf of PERS by Maurice C. Mast, M.D., who concluded that there was insufficient evidence of permanent disability. Accordingly, he recommended denial of disability benefits.
 {¶ 21} 6. On March 20, 2002, PERS informed relator that her application was denied, stating in part:
 {¶ 22} "The Public Employees Retirement Board reviewed your disability application including all medical documentation submitted in connection with your application at the March 20, 2002 board meeting.
 {¶ 23} "Your disability application and your attending physician report claim that you are permanently disabled due to osteophytes. Based upon this information, you were referred to Dr. James Powers (physical medicine specialist), who conducted an independent medical examination as required by the retirement law. He conducted a thorough examination and evaluation of your condition as well as a review of your job description. Based upon this examination and review, he concluded that you are not permanently disabled from your job duties as a Rehabilitation Aide. The examination and review did not indicate sufficient objective medical evidence of a disabling condition.
 {¶ 24} "* * * [T]he medical consultants recommended to the retirement board that disability be denied.
 {¶ 25} "Based upon all the medical information and recommendations, the PERS medical consultants and the PERS retirement board agreed, at its March 20, 2002 board meeting, that you are not permanently disabled from performing your job duties as a Rehabilitation Aide. * * *"
 {¶ 26} 7. Relator appealed. In May 2002, she consulted Robert M. Hess, M.D., who provided an extensive report and concluded that relator was physically disabled and permanently incapacitated from performing her duties. In addition, relator filed a vocational/psychological assessment from Beal D. Lowe, Ph.D.
 {¶ 27} 8. PERS requested an additional, independent medical evaluation, and relator was examined in July 2002 by Timothy J. Fallon, M.D. Dr. Fallon described his interview of relator and reviewed her medical history. He noted, among other things, that, while one surgeon had recommended surgery for cervical spinal stenosis, another had recommended trying physical therapy. In addition, relator indicated that her treating physician was doing a work-up in regard to her low back and was requesting imaging studies. Dr. Fallon reviewed the results of prior imaging studies, and he then described his findings upon examination. He concluded as follows:
 {¶ 28} "In summary then, this is a woman who has underlying spondylolisthesis at L5/S1 in the lumbar area. She also has degenerative changes in the cervical area as well as lumbosacral area and is noted to have an element of cord effacement due to disk disease I the cervical area.
 {¶ 29} "It is my medical opinion at this point in time that she had chosen to be treated conservatively and she does not present with evidence of any long-track signs today or evidence of an ongoing condition that would preclude her from continuing in her work activity. It would appear that her cervical condition is the most pressing one and would likely be amenable to treatments outlined by Dr. Zerick. In the meantime, she could continue in her work activity. * * *"
 {¶ 30} 9. In August 2002, Dr. Mast again recommended that disability benefits be denied.
 {¶ 31} 10. On August 21, 2002, the board met to consider the appeal, which it denied, explaining as follows:
 {¶ 32} "The Public Employees Retirement Board reviewed your disability application appeal, including all medical documentation submitted in connection with your application at the August 21, 2002 board meeting.
 {¶ 33} "Your disability application and your attending physician report claim that you are permanently disabled due to neck, shoulder and arm pains. Based upon this information, you were referred to Dr. Timothy J[.] Fallon (physical medicine specialist), who conducted an independent medical examination as required by the retirement law. He conducted a thorough examination and evaluation of your condition, as well as review of your job description. Based upon this examination and review, he concluded that there was not significant objective medical evidence of a disabling condition and that you are not permanently disabled from your job duties as a Rehab Aide. Specifically, this evaluation indicates that you had chosen to be treated conservatively and you did not present with evidence of any long-track signs.
 {¶ 34} "* * * PERS' medical consultant concluded that you are not permanently disabled from the performance of your job duties as a Rehab Aide. As a result, the medical consultant recommended to the retirement board that disability be denied.
 {¶ 35} "Based upon review of all the medical information and recommendations, the PERS retirement board at its August 21, 2002 board meeting concurred with the conclusion that you are not permanently disabled from performing your job duties as a Rehab Aide. The board upheld its previous action to deny the application."
 Conclusions of Law {¶ 36} Relator has filed this original action contending that PERS and its board committed an abuse of discretion in denying her application for disability retirement. Relator maintains that PERS failed to explain the basis of its decision adequately and failed to cite "some evidence" to support its denial of disability retirement benefits.
 {¶ 37} First, the magistrate observes that Ohio Adm. Code145-11-02(B)(3) requires PERS to state the basis of its decision. This court has held that PERS must identify the evidence relied upon and briefly explain its decision. State ex rel. Green v.Pub. Emp. Retirement Sys. (June 22, 1999), Franklin App. No. 98AP-567.
 {¶ 38} However, although PERS is required to cite the evidence on which it relied and provide a brief explanation of the basis of its decision, PERS is not obliged to provide the same analysis as required in a permanent total disability ("PTD") decision by the Industrial Commission ("commission") involving issues such as the worker's vocational capacity to perform some other type of employment, as in State ex rel. Stephenson v.Indus. Comm. (1987), 31 Ohio St.3d 167, and State ex rel. Nollv. Indus. Comm. (1991), 57 Ohio St.3d 203. The disability issue before PERS is much narrower, in that PERS must decide only whether the applicant was medically capable of performing herformer job duties.
 {¶ 39} In a Stephenson/Noll analysis, the question of whether the worker is medically unable to return to his former duties is merely the first issue. Next, if the claimant is unable to return to his former position of employment, the commission then determines the applicant's residual medical capacity for other kinds of work. Then, after the determination of medical capacity for other employment, the commission must proceed to an analysis and evaluation of the claimant's nonmedical factors. This vocational analysis includes consideration of education, work history, current marketable skills that are transferable to lighter work, whether the lack of current skills was caused by the worker's failure to engage in vocational rehabilitation, and whether marketable skills could be developed in the future with training. E.g., Noll; Stephenson; State ex rel. Speelman v.Indus. Comm. (1992), 73 Ohio App.3d 757; State ex rel. Ewart v.Indus. Comm. (1996), 76 Ohio St.3d 139; State ex rel. Wilson v.Indus. Comm. (1997), 80 Ohio St.3d 250. The commission's nonmedical evaluation often includes consideration of reports of vocational consultants as to whether the claimant could learn to perform a new and different job. However, the commission is a vocational evaluator with considerable expertise and may form its own independent opinion. E.g., State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266. However, the commission must set forth its independent analysis of the nonmedical factors. E.g., State ex rel. Williams v. Indus. Comm. (Mar. 25, 1999), Franklin App. No. 98AP-573.
 {¶ 40} Thus, in a PTD matter, the commission must often analyze a multitude of factors. It must consider the medical factors in light of and in combination with the nonmedical factors. In a PTD consideration, the threshold question — whether the claimant is medically capable of returning to his former position of employment — is a comparatively simple determination in which the commission must decide only which medical opinion is more persuasive. See, e.g., Speelman, supra.
 {¶ 41} In a PERS determination of disability retirement, theonly question is whether the applicant is medically capable of returning to his former position of employment. To decide whether the applicant is medically incapacitated from performing his or her usual duties, the PERS board must review the medical opinions and determine which reports are more persuasive on this issue. PERS is not obliged to determine the applicant's residual medical capacity for other types of work. Nor does it evaluate the applicant's education, work history, existing skills, trainability, vocational efforts, age, etc., in determining whether there are other types of work that the applicant could perform. The entire issue before PERS is whether the applicant is medically incapacitated from returning to the former duties. Thus, in order to state "the basis" of its decision, the PERS board need not provide an analysis as extensive as when the Industrial Commission decides a PTD matter in which the combination of medical and nonmedical factors is crucial. Of course, the general requirement of Noll applies in that PERS must set forth a brief explanation identifying the evidence on which it relied.
 {¶ 42} In the present action, PERS stated its decision both in an initial determination and on administrative appeal. In the first decision, the board stated that it considered the medical examination of Dr. Powers as well as the attending physician's report. The board stated that it relied on Dr. Powers' opinion in determining that there was not "sufficient objective medical evidence of a disabling condition." The board explained that its evaluation indicated that there was "insufficient evidence of permanent disability due to chronic musculoskeletal pains," clearly adopting the opinion of Dr. Powers, its examining physician.
 {¶ 43} On administrative appeal, the board issued a more detailed decision. For example, it did not refer generally to relator's complaints of chronic "musculoskeletal" pain but delineated that relator claimed disability based on neck, shoulder and arm pain. The board noted that it had referred relator for an additional medical examination, and it described Dr. Fallon's findings at some length. The board explained that Dr. Fallon, a physical medicine specialist, had reviewed the job description as well as conducting a thorough examination. The board stated that Dr. Fallon had found a lack of "significant objective medical evidence of a disabling condition" and had concluded that relator was not permanently disabled from performing her duties as a rehabilitation aide. In addition, the board noted that relator had chosen to be treated conservatively and "did not present with evidence of any long-track signs." Thus, the board clarified not only that it relied on Dr. Fallon but it highlighted those medical findings and conclusions that it had found particularly persuasive. Again, the board noted the recommendation of Dr. Mast, although it did not identify him by name, and, in addition, the board stated that it had reviewed all the medical information and recommendations. The board explained that, at its August 21, 2002 meeting, the board's members had concluded that relator was not permanently disabled from performing her duties as a rehabilitation aide, and, accordingly, it upheld the denial of relator's application.
 {¶ 44} The medical issues before PERS were not complex, and the board did not have a legal duty to provide a more extensive explanation regardless of how desirable a more in-depth explanation might be. All the medical complaints were essentially orthopedic in nature, so that the application did not present questions such as the combined effect of psychological and physical incapacities. The medical reports were clear and relatively easy to follow. The fact that the board did not simply reject relator's new evidence on appeal but chose to obtain an additional medical evaluation shows that the board gave due consideration to relator's additional evidence. Under the circumstances of this case, it was sufficient for PERS to identify the medical reports on which it relied and to state briefly the medical basis for its decision on permanent disability. Read cumulatively, the board's decisions provide a clear picture of the board's reasoning and its reliance on the independent physicians who examined the applicant on PERS' behalf. Contrary to the situation in Green, supra, it cannot be said of these decisions that they "provide no insight into the reason the decisions were resolved against relator or of what evidence was considered in making the decisions, thereby making a meaningful review of the decisions virtually impossible." Accordingly, the magistrate concludes that relator has not met her burden in mandamus of proving an abuse of discretion by PERS in regard to stating the basis of its decision.
 {¶ 45} In her second argument, relator contends that the PERS decision is not supported by "some evidence." Relator contends that the report of Dr. Mast was defective and further contends that the reports of Drs. Fallon and Mast were "greatly overshadowed" by the highly persuasive reports of Drs. Hess and Lowe.
 {¶ 46} In regard to Dr. Mast's report, the magistrate concludes that, even if his report were defective in some way and could not support the board's decision, the reports of Drs. Fallon and Powers sufficiently supported the board's decision. See, generally, State ex rel. Quarto Mining Co. v. Foreman
(1997), 79 Ohio St.3d 78 (denying a writ of mandamus in a workers' compensation matter, noting that, even if Dr. Smith's report were removed from evidentiary consideration, there still remained the report of Dr. Gatens to support the agency's decision regarding disability benefits).
 {¶ 47} The remaining argument appears to be a contention that the reports of the attending physicians should be given greater weight because, in relator's view, her physician's reports were more "persuasive." In mandamus, however, the court does not weigh the evidence. State ex rel. McMaster v. School Emp. RetirementSys. (1994), 69 Ohio St.3d 130; State ex rel. Schwaben v.School Emp. Retirement Sys. (1996), 76 Ohio St.3d 280; State exrel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18. Moreover, this court has held that PERS is not required to give greater weight to the medical opinions submitted by the treating physicians. State ex rel. Reder v. Public Emp. Retirement Sys.
(Dec. 12, 2000), Franklin App. No. 00AP-447.
 {¶ 48} In summary, the magistrate concludes that relator has not met her burden of proof in mandamus. The board's denial of the application was adequately supported by the medical opinions of Drs. Powers and Fallon, on whom the board expressly relied, and the board adequately stated the basis of its decision to deny the application. Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.