[Cite as *State ex rel. Burroughs v. Bd. of Ohio Hwy. Patrol Retirement Sys.*, 2016-Ohio-2808.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jeffrey A. Burroughs, | : | |
| Relator, | : | |
| v. | : | No. 15AP-89 |
| Board of Ohio Highway Patrol | : | (REGULAR CALENDAR) |
| Retirement System and Ohio | | |
| Highway Patrol Retirement System, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 3, 2016

**On brief:** *Dagger, Johnston, Miller, Ogilvie & Hampson, LLP,* and *D. Joe Griffith,* for relator.

**On brief:** *Michael DeWine*, Attorney General, *John J. Danish*, and *Mary Therese Bridge,* for respondents.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, P.J.

{¶ 1} Relator, Jeffrey A. Burroughs, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Board of Ohio Highway Patrol Retirement System ("board") to vacate its decision which terminated relator's disability, and ordering the board to reinstate his disability.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, appended hereto, including findings of fact and conclusions of law. The magistrate recommends that this court deny the request for a writ of mandamus.

{¶ 3}   Relator has filed the following objection to the magistrate's decision:

> The Retirement System's Decision was unreasonable and not supported by any evidence.

{¶ 4}   Relator does not object to the magistrate's findings of fact, therefore we adopt them as our own.  We consider, however, relator's argument that: (1) the evidence of relator's participation in the Savage Race Ohio 2014, and (2) the report of the independent medical evaluator, Dr. Nancy Vaughan, do not constitute "some evidence" that relator could perform the duties of a state trooper.  Specifically, we consider the argument that "[participating in] the race * * * does not indicate an ability to subdue perpetrators or engage in physical contact, which is required of a patrolman."  (Relator's Objection, 11.)

{¶ 5}   With regard to participation in the Savage Race, relator argues there was no evidence that he did anything other than walk or jog at a 20-minute-mile pace.  Relator also argues that his participation in the race is not evidence sufficient to demonstrate he could perform the duties of a state trooper.  We agree with this latter argument.  The Savage Race description contained in the record, and Dr. Vaughan's more detailed summary description of the race, may constitute some evidence that relator could perform *some* duties of a state trooper.  However, the descriptions do not constitute some evidence that full participation in the race would equate with relator being able to perform *all* duties of a state trooper.  In her August 1, 2014 report, Dr. Vaughan described the race as follows: "an 'intense 5- to 6- mile obstacle run with 25 world class obstacles, mud, fire, and barbed wire.  Completion requires teamwork, courage, and the will to push your limits farther than you ever have before.  You are on [an] individually created team!' Obstacles include jumping into ice water baths, sprinting uphill through a sea of tires, climbing over an 8-foot wall, running through thick, shoe-sucking mud, carrying a log or sand bag, jumping off of a building into deep water, jump over rows of fire, [and] low crawl through mud."  Clearly, the race descriptions constitute evidence that relator could perform some of the physical duties of a state trooper, such as "[c]limb[ing] over obstacles, vehicles and rough terrain at crash scenes," "[r]un[ning] after fleeing violators," "[r]unning," "[w]alking," "[l]ifting (heavy objects at times)," and "[c]limb[ing] stairs."  However, the race descriptions do not constitute evidence that relator could perform other physical duties of a state trooper, in particular, "[s]ubdu[ing] violators and attackers

who resist arrest," "[o]perat[ing] a patrol car at high speeds," or "[a]ssist[ing] in controlling large numbers of unruly people," among other activities.[1]

{¶ 6} With regard to Dr. Vaughan's August 1, 2014 report, relator argues that the report cannot be used as some evidence on which to rely because: (1) it uses the term "[a]pparently," (2) it contains the erroneous conclusion that relator is fully recovered because he ran the race at a faster pace than his wife, and (3) it goes against the vast majority of medical evidence presented, including evidence that additional testing is necessary before coming to any conclusion. In particular, relator points to the board's own medical advisor, Dr. David A. Tanner's, second letter, dated October 6, 2014, written after his initial concurrence with Dr. Vaughan's assessment, that relator should participate in a physical capacity evaluation of his functional abilities. Relator argues that the magistrate ignored this second letter and used only Dr. Tanner's first letter, dated August 20, 2014, to support Dr. Vaughan's letter. In his October 6, 2014 letter, Dr. Tanner noted that in light of new medical documentation submitted after Dr. Vaughan's August 1, 2014 report, the progress note of Dr. Duncan E. Legg dated September 8, 2014, and the medical record office visit note from Dr. Gregory Z. Mavian dated September 15, 2014, he would concur and agree with Dr. Mavian's recommendation to have relator participate in a physical capacity evaluation.

{¶ 7} Respondents argue that Dr. Vaughan's report constitutes some evidence on which the board could rely to find that relator does not have a disabling condition. Respondents further argue that Dr. Vaughan was the only physician who reviewed relator's job description when considering his disability status. Further, respondents argue that in his August 20, 2014 letter, Dr. Tanner initially concurred with Dr. Vaughan's findings. Finally, respondents argue that Dr. Vaughan was the board's independent medical evaluator, and that her report, along with the board's concurrence, is the only evidence needed pursuant to Ohio Adm.Code 5505-3-03(C).

{¶ 8} In her August 1, 2014 report, Dr. Vaughan acknowledged some of relator's duties as a state trooper: "According to the job duties and responsibilities, he must wear a gun belt, subdue violators, operate a patrol car, wear a seatbelt, assist in rescuing injured persons, climb over obstacles, vehicles, and rough terrain, run after fleeing violators,

---

[1] Dr. Vaughan also noted that relator stated he was "unable to accurately shoot a firearm." The race descriptions also do not constitute some evidence of relator's ability to accurately shoot a firearm. We note, however, that the job duties and responsibilities of relator, provided by the Highway Patrol Retirement System, do not include a duty or responsibility that relator be able to shoot a firearm. There is a duty/responsibility, however, to "wear a gun belt including a holster."

[and] lift heavy objects." She indicated that she reviewed the records submitted by the Ohio State Highway Patrol regarding the Savage Race and, as noted above, incorporated a summary description of the race into her report. Dr. Vaughan also indicated that she conducted a physical examination of relator's cervical spine, upper limbs, and lower limbs. She noted, "[a]pparently he is fully recovered from his cervical decompression and fusion. No myelopathic findings on examination today." Nevertheless, she did not base her conclusion that relator could perform his job duties on her medical examination, rather, she concluded "[*b*]*ased on the fact that he was able to complete this vigorous event* and looking at his job description provided, it is my medical opinion that at this point in time he has recovered and he could physically perform his assigned duties as a highway patrolman." (Emphasis added.) As noted above, the evidence of relator's participation in the Savage Race does not constitute some evidence that he could perform *all* the duties and responsibilities of a state trooper as outlined by the Ohio State Highway Patrol.

{¶ 9} Relator argues that the only way to determine whether he has the ability to perform the duties of a state trooper is to complete a physical capacity evaluation. He notes this was recommended by his own physicians and by Dr. Tanner, the board's medical advisor.

{¶ 10} On review of the magistrate's decision, an independent review of the record, and due consideration of relator's objection, we find the magistrate has properly determined the pertinent facts and adopt them as our own. However, we sustain relator's objection to the magistrate's decision and modify the magistrate's conclusions of law consistent with this decision. Accordingly, we grant a limited writ of mandamus for the purpose of completing a physical capacity evaluation to determine whether there is some evidence that relator could physically perform *all* of his assigned duties as a state trooper.

*Objection sustained;*
*limited writ of mandamus granted.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jeffrey A. Burroughs, | : | |
| Relator, | : | |
| v. | : | No. 15AP-89 |
| Board of Ohio Highway Patrol Retirement System and Ohio Highway Patrol Retirement System, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

## MAGISTRATE'S DECISION

### Rendered on October 28, 2015

*Dagger, Johnston, Miller, Ogilvie & Hampson, LLP,* and *D. Joe Griffith,* for relator.

*Michael DeWine,* Attorney General, *John J. Danish* and Mary Therese Bridge, for respondents.

### IN MANDAMUS

{¶ 11} Relator, Jeffrey A. Burroughs, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, the Board of Ohio Highway Patrol Retirement System ("board"), to vacate its decision which terminated relator's disability, and ordering the board to reinstate his disability.

Findings of Fact:

{¶ 12} 1. Relator began working as a state trooper with the Ohio State Highway Patrol ("OSHP") in 1997.

{¶ 13} 2. In 2007, relator began experiencing significant problems with his neck, which resulted in surgery in September 2010. At that time, Gregory Mavian, D.O., performed the following procedure:

> Anterior cervical microdiskectomy, partial corpectomy, extensive spinal cord and nerve root decompression c3-4, c4-5, c5-6, c6-7, with structural interbody allograft with individually cut, contoured grafts at each level with anterior cervical spinal instrumentation utilizing 80 mm Atlantis plate and 15 mm screws, c3-4, c4-5, c5-6, c6-7, use of the operating microscope and placement of cervical Jackson-Pratt drain.

{¶ 14} 3. Although by all accounts relator responded well to the surgery and his prognosis was good, Dr. Mavian opined that relator was totally incapacitated from the performance of his specific job duties as a state trooper for the OSHP. Specifically, Dr. Mavian indicated that relator was unable to perform the following duties and responsibilities: "[p]hysical altercations - risk of injury to neck (cervical spine)." Dr. Mavian advised relator to continue his post-operative recovery and reconditioning/muscle strengthening and indicated that his prognosis for improvement was "good."

{¶ 15} 4. Relator was examined by Claire V. Wolfe, M.D. In her December 21, 2010 report, Dr. Wolfe concluded that, although relator had responded well to surgery, in her opinion, he could not fulfill all of the requirements of a state trooper. Specifically, she stated:

> Mr. Burroughs has recovered well from his cervical spine surgery but he should not be in a situation that would put him at risk. Even with his successful fusion, he still has some symptoms and signs of his myelopathy. He has lumbar issues that are probably very similar and he would not be able to fulfill all of the requirements of a patrol officer especially for responding to emergencies and dealing with perpetrators.

{¶ 16} 5. Christopher D. Cannel, M.D., a physical medicine and rehabilitation specialist, authored a report dated March 9, 2011, recommending that relator be granted disability and stating:

> In my opinion, based on Mr. Burroughs' job description as a state trooper which involves driving throughout much of the day, at times being involved in altercations as well as having to be part of self-defense training and instruction, I am of the opinion that he is not able to perform his duty as a state trooper. His limited cervical range of motion would

significant[ly] effect his driving ability and his underlying cervical condition prevents him from being involved in physical altercations or with self-defense instructing or self-defense classes. There would be a greater risk for further harm in light of his underlying cervical pathology.

{¶ 17} 6. In a letter dated April 29, 2011, relator was advised that the board had voted to approve his off-duty disability retirement application, effective April 28, 2011.

{¶ 18} 7. In 2013, relator was asked to submit an annual statement of earnings and medical information pursuant to R.C. 5501.18(E) and Ohio Adm.Code 5505-3-03. In response, relator submitted his statement of earnings, a copy of his job description with Northwoods Consulting Partners, and a report from Dr. Mavian.

{¶ 19} 8. The board's medical consultant, Earl A. Metts, M.D., performed an annual disability evaluation, and noted that relator's disability was ongoing.

{¶ 20} 9. In June 2014, relator participated in Savage Race Ohio 2014. The event is described at the website http://www.savagerace.com/about (accessed Jun. 27, 2014), as follows:

**ARE YOU A SAVAGE?**

Savage Race is an intense 5-7 mile obstacle run with 25 world class obstacles, mud, fire, and barbed wire. Completion requires teamwork, courage, and the will to push your limits farther than you ever have before. Run individually or create a team!

\* \* \*

**THE SAVAGE OBSTACLE COURSE**

We carefully select each venue to ensure that our mud races occur on the gnarliest terrain available in your region. We won't settle for a boring cow pasture, or just any old piece of land. Nope. Our obstacle courses feature plenty of natural features to keep things interesting. Each venue is different, of course, but in all cases you should expect an extreme dirty mud racing environment!

\* \* \*

Adding to the mayhem, we sprinkle 25 or more insane obstacles throughout the already-difficult course. Obstacles will vary by location, and you should always be prepared to face a surprise or two along the way. View our obstacles.

* * *

**SAFETY RULES**

Course obstacles may be hazardous. Savage Race is designed to push your limits, but do not attempt an obstacle that you are uncomfortable with. Race officials will always offer a fitness-oriented alternative to any obstacle. Be smart and use your discretion. Notify a race official if you are injured or feel that your safety is in danger at any time during the race.

(Emphasis sic.)

{¶ 21} Relator completed the race in 2 hours, 27 minutes, and 28.9 seconds.

{¶ 22} 10. Although it is not clear how the board learned that relator had participated in this event, upon being notified that he participated in the Savage Race, David A. Tanner, D.O., advised that relator needed to be seen for an independent medical examination.

{¶ 23} 11. Relator was examined by Nancy M. Vaughan, M.D. In her August 1, 2014 report, Dr. Vaughan set forth the history of relator's injuries, noted his job duties and responsibilities, and discussed his current activities, including:

Since he was previously evaluated, he has taken a job in project management for a software company. He has worked there for over two years. He said in management he helps with the budget and scheduling. He does travel. He has to drive or fly to Charlotte, North Carolina frequently. He has also been to California, Virginia, and has had jobs in Ohio. He states he is at a site for three to six months at a time. He states that he uses a laptop computer. According to the job description for Northwoods Consulting Partners for the coordinator of project management, he must understand project contract terms, such as payment terms, performances, environmental or legal constraints. He must coordinate the delivery and employment of technologies. He must be able to identify and document project issues and risks.

He denies active instruction in partial [sic] arts. He said he does do some training for alcohol impairment and education. He does admit to working out with his two teenage sons. He states that he "tries to keep up with them." He stated that he had a difficult time with fine motor skills as another reason for not being able to perform as a patrolman; however, he did tell me that he is using a laptop computer at his current job, which in my opinion is more challenging from a fine motor standpoint than using a desktop computer.

\* \* \*

> I did review the records that were submitted by the Ohio State Highway Patrol regarding The Savage Race of Ohio 2014 where Mr. Jeffrey Burroughs and family members did participate as a part of "The Young and the Restless Team." Jeff Burroughs did finish this race in two hours and 27 minutes. The Savage Race is an "intense 5- to 6-mile obstacle run with 25 world class obstacles, mud, fire, and barbed wire. Completion requires teamwork, courage, and the will to push your limits farther than you ever have before. You are on [an] individually created team!" Obstacles include jumping into ice water baths, sprinting uphill through a sea of tires, climbing over an 8-foot wall, running through thick, shoe-sucking mud, carrying a log or sand bag, jumping off of a building into deep water, jump over rows of fire, low crawl through mud.

{¶ 24} Dr. Vaughan provided her physical findings upon examination and noted the following impression:  "[s]tatus post cervical decompression and fusion. No evidence of myelopathic findings on examination."  Thereafter, Dr. Vaughan concluded that, in her opinion, relator could return to his former position of employment, stating:

> Apparently he is fully recovered from his cervical decompression and fusion. No myelopathic findings on examination today. According to the records he was able to participate in a very rigorous event called the Savage Race of Ohio. He was able to complete the event in less than two and a half hours. (A female completed the event at about the same time. I am not sure of the relationship. The name was Lisa Burroughs.) Based on the fact that he was able to complete this vigorous event and looking at his job description provided, it is my medical opinion that at this point in time he has recovered and he could physically perform his assigned duties as a highway patrolman; however, currently he has a different job and may not elect to return to his former occupation.

{¶ 25} 12. David A. Tanner, D.O., reviewed Dr. Vaughan's report and, in a letter dated August 20, 2014, concurred with her findings and recommendations.

{¶ 26} 13. In a letter dated August 25, 2014, relator was notified as follows:

> This letter is to advise you at the August 21, 2014 meeting, the Retirement Board voted to terminate your disability. The effective date of your disability termination will be August 21, 2014, unless you chose [sic] to appeal as

described below and in Ohio Administrative Code (OAC) 5505-3-03.

{¶ 27} 14.  In a letter dated September 2, 2014, relator provided a written notice of appeal concerning the termination of his disability benefits, stating:

> The Retirement Board[']s decision was apparently based on a medical evaluation conducted by Dr. Nancy Vaughn on August 1st, 2014. Although Dr. Vaughn's evaluation was very brief and did not consist of any X-Rays, MRI's or conversation about permanent nerve damage, or the numerous screws and metal implanted in my neck, she made the decision that I could miraculously now perform the duties of a State Trooper. Dr. Vaughn primarily based the decision on information that I had participated in a non competitive exercise event called The Savage Race, and that I lift weights. There is no documentation or Revised Code that says a disability separated Trooper cannot maintain health through exercise. Dr. Vaughn's assessment of the duties of a State Trooper must be clouded. To assume that because an individual exercises makes them fit for the responsibilities of a State Trooper is inaccurate as you well know. State Troopers not only need to be fit but they must be able to work long hours with heavy gear, confront violent hostile crowds, and participate in violent confrontations. Some of these confrontations may require use of a steady firearm, or prolonged ground fighting. Both of which were reasons why Dr. Vaughn's co-worker, Dr. Claire Wolfe, determined I could not do the job and recommended the Patrol disability separate me in the first place. My condition has not changed since the day Dr. Claire Wolfe determined me to be unfit for duty as a State Trooper. My condition will never change. Apparently, the Patrol's acceptance of my conditions is what has changed.

{¶ 28} 15.  Relator saw his family physician, Duncan E. Legg, M.D., to discuss Dr. Vaughan's findings.  Thereafter, Dr. Legg noted:

> He does not have any type of significant pain in his neck but does note muscle stiffness and decreased range of motion. He has had a fusion at C3-7 with hardware placement due to degenerative arthritis and disc disease. * * * He notes a tremor in his left hand, particularly in the left thumb and index finger.
>
> * * *
>
> He'll continue with his current evaluation. He has plans to meet with his neurosurgeon, Dr. Mavian. He has definite loss of range of motion in the cervical spine. He has metal

> hardware in the neck area from his surgical procedure. I recommend he continue with his current occupation which does not pose a significant peril to his neck. Continue with current medication. I would not recommend return to full duty work as a police officer due to his lack of range of motion of his cervical spine and the potential for significant injury to his fused cervical spine in the event of a physical confrontation.

{¶ 29} 16. In a letter dated September 15, 2014, Dr. Mavian stated the following on examination:

> Cervical restriction is noted on rotation right and left with extension and flexion all intact within normal limits slightly restricted but without pain.

{¶ 30} Thereafter, Dr. Mavian recommended:

> [One] Condition symptomatic care and treatment with over-the-counter anti-inflammatory medications and symptomatic care.

> [Two] I would recommend that the patient continue moderate exercise to maintain satisfactory muscle tone and posture so as to prevent cervicodorsal kyphosis C7-T1- and C2-C3.

> [Three] I maintained that the patient should not participate in any law enforcement activities so as to risk a serious injury and recurrent symptoms of his cervical spine.

> [Four] I would recommend a physical capacity evaluation in a structured formal matter to assess his physical abilities as discussed.

> Dr. Legg, I believe that Mr. Burroughs has done extremely well considering the extensive surgery he had and the fact that he has really not had any significant problems since his surgery. I do understand his frustration with "the system" and he has been encouraged to participate in physical activities within limits and common sense to be exercised to maintain good physical strength and good posture to prevent future problems. However just because this individual does participate in physical activities and athletic events does not "qualify him for duty" simply because a physical altercation as a state trooper or law enforcement officer is a totally different situation [sic] then using common sense and working out with regular fitness activities.

> I would ask that you consider referring this individual for a Physical Capacity Evaluation or my secretary could perhaps assist him if necessary and symptomatic care and treatment is to be maintained.

{¶ 31} 17. In a letter dated October 2, 2014, counsel for relator made the following argument to the board:

> The basis for this appeal is fourfold. First, the medical condition that prompted the Retirement Board to approve Mr. Burroughs's application for disability in 2011 has not changed. He is just as disabled today from serving as a State Trooper as he was in 2011. Second, Mr. Burroughs's participation in a foot race, which apparently triggered the review of his status, is irrelevant to the issue of whether Mr. Burroughs is disabled from working as an Ohio State Trooper. Third, Dr. Vaughan's report does not contradict the earlier findings that prompted the Retirement Board to deem Mr. Burroughs disabled, nor does her report establish a reasonable basis for concluding that Mr. Burroughs is no longer disabled. Finally, Mr. Burroughs's physicians have both opined that Mr. Burroughs remains disabled from returning to work as a State Trooper.
>
> * * *
>
> **Mr. Burroughs's participation in "The Savage Race of Ohio" does not support the termination of his disability benefits.** Neither Dr. Tanner nor Dr. Vaughan offers a convincing rationale for why Mr. Burroughs's participation in a foot race means he is now able "to fulfill all of the requirements of a patrol office[r], especially for responding to emergencies and dealing with perpetrators." The race was largely a running race; there was no requirement that a participant engage in any physical encounters or otherwise do anything that risked injury to Mr. Burroughs's neck or spinal cord. Mr. Burroughs, after all, competed in (and completed) the race alongside his wife (who is a deputy county auditor). Not to disparage Ms. Burroughs or her occupation, but is the fact that Mr. Burroughs can perform a physical task at the same level as a deputy state auditor (whose job is largely sedentary) a sufficient basis upon which to terminate his disability benefits?

(Emphasis sic.)

{¶ 32} 18. After reviewing the independent medical evaluation performed by Dr. Vaughan, as well as the progress note from Dr. Legg and the report from Dr. Mavian, Dr.

Tanner concurred with Dr. Mavian's recommendation that relator participate in a physical capacity evaluation ("FCE").

{¶ 33} 19. The board did not refer relator for an FCE and, in a letter dated October 17, 2014, the board notified relator as follows:

> This letter is to advise you the Retirement Board upheld its August 21, 2014, decision to terminate your disability retirement at its October 16, 2014 meeting. The effective date of your disability termination will be October 16, 2014.

{¶ 34} 20. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 35} Mandamus is the appropriate remedy for relator to seek relief from an adverse determination concerning disability retirement benefits or from other retirement decisions. *See State ex rel. Pontillo v. Pub. Emp. Retirement Sys. Bd.,* 98 Ohio St.3d 500, 2003-Ohio-2120; *State ex rel. Moss v. Ohio State Hwy. Patrol Retirement Sys.,* 97 Ohio St.3d 198, 2002-Ohio-5806; *State ex rel. Mallory v. Pub. Emp. Retirement Bd.,* 82 Ohio St.3d 235 (1998); and *State ex rel. McMaster v. School Emp. Retirement Sys.,* 69 Ohio St.3d 130 (1994). In order to prevail, relator must demonstrate that: (1) she has a clear legal right to the relief requested; (2) the board has a clear legal duty to provide the relief requested; and (3) relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Gill v. School Emp. Retirement Sys. of Ohio,* 121 Ohio St.3d 567, 2009-Ohio-1358.

{¶ 36} When there is conflicting medical evidence submitted to a public retirement system board, the court cannot substitute its judgment for that of the board and find an abuse of discretion. *State ex rel. Bruce v. State Teachers Retirement Bd. of Ohio,* 153 Ohio App.3d 589, 2003-Ohio-4181 (10th Dist.). The term abuse of discretion connotes a board decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). Where there is some evidence in the record to support the board's decision, the board has not abused its discretion. *State ex rel. Marchiano v. School Emps. Retirement Sys.,* 121 Ohio St.3d 139, 2009-Ohio-307. In *State ex rel. Thomas v. Pub. Emps. Retirement Sys.,* 10th Dist. No. 03AP-137, 2004-Ohio-1403, this court has stated that, "[i]n order to constitute an abuse of discretion, the court's decision must be so grossly inconsistent with fact or logic that it displays 'not the exercise of reason but instead passion or bias.' "

{¶ 37} Initially, the magistrate finds that Dr. Vaughan's use of the word "apparently" does not disqualify her report from evidentiary consideration, and is not proof that she applied an incorrect standard.  Based on her examination and relator's ability to participate in the Savage Race, Dr. Vaughan concluded that it appeared that relator could perform the duties of his job as a state trooper.

{¶ 38} Relator asserts that the evidence was insufficient to justify the termination of his disability benefits. Relator asserts that his condition has not changed and there is no new objective medical evidence to support the determination that he can return to a job where there is a threat of serious injury which could come from a blow or a jerk to his neck.

{¶ 39} In originally granting relator disability, the board had before it the report of Dr. Mavian who indicated that relator was unable to perform the following duties and responsibilities:  "[p]hysical altercations - risk of injury to neck (cervical spine)."  Dr. Mavian did, however, note that relator's prognosis was good.  Dr. Wolfe agreed that relator should not return to work, stating as follows in her December 21, 2010 report:

> Mr. Burroughs has recovered well from his cervical well from spine surgery but he should not be in a situation that would put him at risk. Even with his successful fusion, he still has some symptoms and signs of his myelopathy. He has lumbar issues that are probably very similar and he would not be able to fulfill all of the requirements of a patrol officer especially for responding to emergencies and dealing with perpetrators.

{¶ 40} Further, in his March 9, 2011 report, Dr. Cannell stated:

> In my opinion, based on Mr. Burroughs' job description as a state trooper which involves driving throughout much of the day, at times being involved in altercations as well as having to be part of self-defense training and instruction, I am of the opinion that he is not able to perform his duty as a state trooper. His limited cervical range of motion would significant[ly] effect his driving ability and his underlying cervical condition prevents him from being involved in physical altercations or with self-defense instructing or self-defense classes. There would be a greater risk for further harm in light of his underlying cervical pathology.

{¶ 41} All of the medical evidence submitted when his disability retirement was granted indicated that relator was unable to perform his duties as a state trooper because

of the possibility that he would encounter sudden, forceful, unexpected forces upon his neck, and his neck was not strong enough to sustain such trauma.

{¶ 42} Although relator contends that he did nothing more than stay in shape, it is clear that he did more than lift weights in a controlled environment or jog/run. During the Savage Race, participants crawl under barbed wire, work their way through fields of mud, apparently exerting significant force to extricate their feet from the mud, climb over obstacles, crawl through tunnels, lift and carry heavy objects, and run up hill through a series of tires, etc. During the course of any of these activities, participants are exposing themselves to sudden and somewhat unexpected forces. Upon examining relator and considering the activities which he was able to perform during the Savage Race, Dr. Vaughan concluded that the surgery was effective, and, because relator had diligently worked out as Dr. Mavian had instructed him, he was now capable of returning to his employment as a state trooper.

{¶ 43} At oral argument, counsel for relator asserted that relator did not truly participate in the Savage Race but, instead, he simply ran alongside the course without navigating the obstacles. If this was true, relator should have included this fact in his September 2, 2014 letter challenging the board's decision to terminate his disability retirement.

{¶ 44} While it is admirable that relator has stayed in shape and he certainly should be given credit for that, the Savage Race encompasses significantly more than simply working out, lifting weights in a gym, or even participating in an event such as a marathon. Those environments are relatively controlled. However, by its very description, the Savage Race is not a controlled environment. Relator's participation posed the threat of damage to his neck and constitutes some evidence that, following surgery, his prognosis for improvement was indeed good. Based upon relator's ability to participate in such an event and the report of Dr. Vaughan, the magistrate finds that the board did not abuse its discretion when it decided to terminate relator's disability, and this court should deny his request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).